UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

JOSEPH KAYE,

    Plaintiff,

    v.                                                      Case No. 05-C-0982

CITY OF MILWAUKEE, MICHAEL D'AMATO,
DEPARTMENT OF CITY DEVELOPMENT,
MILWAUKEE CITY PLAN COMMISSION,
REDEVELOPMENT AUTHORITY OF THE
CITY OF MILWAUKEE, LINCOLN FOWLER,
JULILLY KOHLER, BUNKIE MILLER,
JOHN HYSLOP, PATRICIA ALGIERS,
LISA CHRISTOPHERSON, SHIRLEY FERGUSON,

    Defendants.
_____

**ORDER**

On September 13, 2005, *pro se* plaintiff Joseph Kaye filed a complaint, alleging that the City of Milwaukee wrongfully denied him the opportunity to buy and develop City-owned real estate and, instead, sold the property to a city employee. (Compl. 2.) Kaye alleges that the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. The defendants have filed motions to dismiss and motions for sanctions. For the reasons stated below, the motions will be granted.

**BACKGROUND**

Kaye contends that the City of Milwaukee wrongfully denied him the opportunity to buy and develop City-owned real estate on the Milwaukee River at 1152-58 Kane Place (the "Kane Place lots"). (Compl. 3.) He alleges that the City

sold the land to defendant Julilly Kohler, an owner of land adjacent to the Kane Place lots and then Vice Chair of the City Plan Commission for the City of Milwaukee during the relevant time period.

Kaye alleges that Kohler agreed to "swap" the Kane Place lots with defendant Lincoln Fowler, then a Redevelopment Authority Commissioner for the City of Milwaukee, for another parcel of property located at 2951-2965 N. Humboldt Avenue ("Humboldt Avenue lots"). (Compl. 3-4, 6.) As a *quid pro quo* for Fowler approving the Redevelopment Authority's sale of the Kane Place lots to Kohler, Kohler approved the sale of the Humboldt Avenue lots to Alterra Coffee Roasters, Inc., a company in which Fowler is a principal shareholder. (Compl. 3-4, 9.)

Kaye also alleges that defendant Michael D'Amato and Kohler collaborated with officers of the East Village Association, Inc. ("EVA"), including defendants Lisa Christopherson and Shirley Ferguson, to draft a historical preservation ordinance to govern the East Village neighborhood (the "East Village Conservation Overlay District Ordinance"). The ordinance would limit the types of real estate development that could occur within the district but created an exemption for Kohler's development of the Kane Place lots. (Compl. 4.) Kaye and others opposed the ordinance and sought to elect their own candidates to the neighborhood organization. Kaye alleges that D'Amato, Kohler, Christopherson and Ferguson engaged in a fraudulent scheme to manipulate the EVA election to retain control of the board from opponents of the ordinance. (Compl. 4-5, 9.) The alleged scheme was to institute a "single transferable voting method," rather than "simple majority

voting," for electing members of the EVA. (Compl. 5.) Kaye alleges that this scheme is wire fraud because the incumbent officers organized a coalition and discussed a voting strategy via e-mail. (Compl. 5, 16-17.) Kaye alleges that the manipulated election deprived EVA members of their right to honest services by their officers and deprived EVA members of a voice in the zoning policies in their neighborhood. (Compl. 9.) Kaye alleges that the EVA "enabled their enterprise" by "providing political cover by talking to newspaper reporters and attending hearings and saying things like 'We speak for the neighborhood association and we like the Conservation Overlay District Ordinance, and we like Commissioner Kohler's condominium development, and we think the City should waive the riverwalk requirement for her development." (Compl. 5.)

Kaye alleges that defendant D'Amato stole a "No Overlay District" yard sign from Jill Bondar, a spokesperson for opponents of the Conservation Overlay District Ordinance. (Compl. 6.) Kaye alleges that D'Amato left a voice mail message that threatened her with a citation. (Compl. 6.) Kaye alleges that D'Amato's actions constitute theft and extortion. (Compl. 6, 9.)

On November 4, 2005, defendants Bunkie Miller, John Hyslop, Patricia Algiers, City of Milwaukee, D'Amato, Department of City Development, Milwaukee City Plan Commission, Redevelopment Authority of the City of Milwaukee, Fowler, and Kohler filed a motion to dismiss.[1] On the same day, the two other defendants

---

[1] Collectively, these defendants are referred to as the "Moving Defendants"; a subset of these defendants that excludes defendants D'Amato, Fowler, and Kohler is termed "City of Milwaukee Defendants." (Moving Defendants' Br. 1 n.1.)

named in the complaint, defendants Shirley Ferguson and Lisa Christopherson, filed a motion to dismiss incorporating the Moving Defendants' brief and filing a separate brief.[2] Kaye filed a brief in opposition to the motions to dismiss on November 16, 2005. The Moving Defendants filed a reply brief on November 23, 2005, and the EVA Defendants filed a reply brief on November 29, 2005, joining in the Moving Defendants' reply brief.

The Moving Defendants and the EVA Defendants filed on November 29, 2005, separate motions for sanctions against Kaye. The EVA Defendants did not file a separate brief but joined in the Moving Defendants' motion. Kaye filed a brief in opposition to the motions for sanctions on December 5, 2005.

On May 31, 2006, West Bend Mutual Insurance Company ("West Bend") filed a motion to intervene, bifurcate and stay. West Bend seeks a declaratory judgment stating that it has no duty to defend or indemnify defendant Kohler in this action. The City of Milwaukee Defendants and D'Amato opposed West Bend's motion on the basis that granting the motion would result in unnecessary delay in the disposition of the action.

**ANALYSIS**

I.  Motions to dismiss

The court accepts all factual allegations in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff, but the court is not

---

[2]The motion was filed on behalf of Ferguson, Christopherson, and the East Village Association, Inc. ("EVA") (collectively, the "EVA Defendants"). (EVA Defendants' Br. 1, 3.)

required to ignore facts alleged in the complaint that undermine the plaintiff's claim. *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001) (citations omitted). Dismissal of a complaint for failure to state a claim is granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), but allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires a plaintiff to plead all averments of fraud with particularity. *Slaney*, 244 F.3d at 597.

Although the court liberally construes allegations in a *pro se* litigant's complaint, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the court does not apply this principle of construction to Kaye's complaint because Kaye is an attorney. *Lockhart v. Sullivan*, 925 F.2d 214, 216 n.1 (7th Cir. 1991) (citation omitted) ("While we treat pro se litigants gently, a pro se attorney is not entitled to special treatment."), abrogation on other grounds recognized by *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998).

A.  Predicate acts and a pattern of racketeering

Kaye has not properly pleaded predicate acts of racketeering or a pattern of racketeering. Kaye alleges violations of 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d).[3] 18 U.S.C. § 1962 states:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain,

---

[3]Kaye also alleges a violation of the Wisconsin Organized Crime Control Act ("WOCCA"), Wis. Stat. § 946.80 *et seq.*

> directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

*Id.* Each of the plaintiff's RICO claims requires that he adequately plead a "pattern of racketeering activity." 18 U.S.C. § 1962. A "pattern of racketeering activity" requires at least two acts of racketeering activity that occurred within 10 years of each other. 18 U.S.C. § 1961(5). "Racketeering activity" encompasses certain acts indictable under specific federal statutes and "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in Section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). A "pattern" of racketeering activity involves more than simply counting the predicate acts involved. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 238 (1989). A pattern requires a showing that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239. The former requirement may be described as a "relatedness" requirement, *id.*, and the latter a "continuity requirement." *See id.* at 240. Predicate acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission,

or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* The continuity requirement is satisfied if the predicate acts occurred for such an extended period of time that a threat of future harm is implicit or if the predicate acts, while short-lived, show clear signs of threatening to continue into the future. *See Roger Whitmore's Auto. Servs. v. Lake County,* 424 F.3d 659, 673 (7th Cir. 2005) (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1023 (7th Cir.1992)). The court analyzes continuity under a multifactor test, including (1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries. *Roger Whitmore's Auto. Servs.,* 424 F.3d at 673.

Kaye's complaint specifies the alleged predicate acts:

The RICO/WOCCA predicate acts that I allege are:

That the contemporaneous sales of City-owned real estate that Commissioners Kohler and Fowler made for each other, were done reciprically [sic], knowingly, and in consideration of each other and as such constitute two acts of each bribery, misconduct in public office, and private interest in public contract - held by the Wisconsin Supreme Court to be a strict liability offense. 134 Wis. 2d 66. Exhibit 79.

That Alderman D'Amato's stealing Jill Bondar's political yard sign and threatening her with a citation and consequences at her City job constitutes theft and extortion. Exhibits 80, 81.

That Commissioner Kohler's participation in official condemnation and zoning decisions that she benefited [sic] personally from constitutes misconduct in public office. Exhibit 79.

That Commissioner Fowler's participation in official foreclosure and grant decisions that he benefited [sic] personally from constitutes misconduct in public office. Exhibit 79.

> That Commissioner Kohler and Alderman D'Amato, and the East Village Association Inc. officers and directors conspired to, and did perpetrate a fraud on the membership of the association during the corporate election in order to retain control of the board. The effect of this fraud was to deprive the EVA membership (myself included) of their right to honest services by their officers and directors, and to deprive them of a voice in the zoning policies in their neighborhood, to the harm of the membership/citizens. This fraud was coordinated by e-mails which constitutes wire fraud. Exhibit 82.

(Compl. 9.) The only defendants that had any alleged involvement with the predicate acts are defendants Kohler, Fowler, D'Amato, Christopherson, and Ferguson; Kaye does not allege that defendants Miller, Hyslop, Algiers, the City of Milwaukee or its agencies participated in the predicate acts. Because each of Kaye's RICO claims requires that Kaye plead a pattern of racketeering activity, *see* 18 U.S.C. §§ 1962(b)-(d), he fails to state a claim against the City of Milwaukee Defendants. Kaye generally alleges that Kohler and Fowler participated in decisions from which they benefitted aside from the alleged swap of the Kane Place lots and the Humboldt Avenue lots. In his brief in opposition to the defendants' motions to dismiss, Kaye summarizes the alleged predicate acts: instances of "private interest in public contract," "extortionate confiscation of [a] political sign," and "the election fraud which used the e-mail networks for the purpose of its execution." (Br. 4, Nov. 16, 2005.)

Kaye describes conduct that does not constitute predicate acts. Theft of a yard sign is not a predicate act. 18 U.S.C. § 1961(1). Extortion is a predicate act, *see id.*, but extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under

color of official right." 18 U.S.C. § 1951(b)(2). The alleged theft of Ms. Bondar's yard sign does not constitute extortion because she did not "consent" to the theft.

Kaye does not sufficiently allege a predicate act of wire fraud in connection with the purported EVA election fraud. Kaye alleges that the fraud consisted of "letting the challenging members believe we would have a simple majority vote for the election," (Compl. 5), and coordinating a coalition and voting strategy via the internet. (Compl. 5, 9.) Kaye cites to Exhibit 56 of his complaint, a one-page document that appears to outline a voting strategy. (Compl. 5.) Kaye is required to plead allegations of fraud with particularity. Fed. R. Civ. P. 9(b); *Slaney*, 244 F.3d at 597. Indeed, Kaye does not allege, and Exhibit 56 does not reveal, who sent the document, when it was sent, or to whom it was sent. Nothing about the document suggests that it was distributed via e-mail. Because Kaye fails to plead allegations of wire fraud with particularity, the court does not consider wire fraud to be a properly alleged predicate act.

The only other predicate acts that Kaye alleges are the "contemporaneous sales of City-owned real estate that Commissioners Kohler and Fowler made for each other." (Compl. 9.) Bribery is a specified RICO predicate act. 18 U.S.C. § 1961(1). Although Kaye does not allege that Kohler or Fowler, by themselves, had the ability to promise the sale of the Kane Place lots or the Humboldt Avenue lots,[4]

---

[4]Exhibits attached to the complaint show that the Redevelopment Authority held a public hearing regarding the sale of the Kane Place lots on May 19, 2005, (Compl. Ex. 23), and a resolution authorizing the sale was considered and passed by the Zoning, Neighborhoods and Development Authority of the Common Council by a vote of 5-0, approved by the full Common Council by a vote of 15-0, and signed by the Mayor. (Compl. Ex. 27.)

for the purposes of deciding the motions before the court, the court presumes that Kaye's allegations of bribery are sufficiently pleaded.

These alleged predicate acts of bribery, standing alone, do not constitute a pattern of racketeering. In their motion to dismiss, the moving defendants argue that Kaye's allegations do not satisfy the continuity requirement because the alleged bribery scheme achieved its goal and there is no threat of continued racketeering activity. (Br. 30-35, Nov. 4, 2005.) Kaye's response is meager: Kaye argues that many victims were hurt over two years from five separate schemes resulting in several distinct injuries. (Br. 5-6, Nov. 16, 2005.) Kaye does not specify the many victims, the time frame involved, the five separate schemes, or the distinct injuries. Kaye does not cite to any allegations within his complaint or to any exhibits. Kaye presumes that extortion and wire fraud are sufficiently alleged predicate acts that the court should consider in determining whether he has alleged a pattern of racketeering, but as the court has already noted, Kaye has not sufficiently pleaded predicate acts of extortion or wire fraud. Even if Kaye had sufficiently pleaded predicate acts of extortion and wire fraud, there is no relationship between the EVA election fraud and the Kohler/Fowler land swap because the purposes, results, participants and victims are different. *See H.J. Inc.,* 492 U.S. at 240 (articulating a relatedness requirement in a "pattern of racketeering activity"). The alleged predicate acts of bribery constitute a single scheme that occurred over a short period of time and that involved two alleged victims: Kaye and an unnamed developer who allegedly wished to purchase the Humboldt Avenue lots. Kaye has not alleged

- 10 -

Case 2:05-cv-00982-JPS    Filed 07/11/06    Page 10 of 17    Document 53

predicate acts that amount to or pose a threat of continued criminal activity. The alleged land-swap scheme achieved its "clear and terminable goal," *Roger Whitmore's Auto. Servs.*, 424 F.3d at 674 (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994), and Kohler no longer works for the City Plan Commission. (Compl. 8.) Even if this court accepts Kaye's allegations as true, the alleged predicate acts of bribery do not constitute a pattern of racketeering and Kaye's RICO claims must be dismissed. *See Roger Whitmore's Auto. Servs.*, 424 F.3d at 673 (concluding that there was no continuity where the conduct occurred over two years at most, involving a fairly small number of predicate acts, a small number of victims, and a single scheme).[5]

B.   Enterprise

Kaye's RICO claims must be dismissed for another reason: Kaye has not properly pleaded the existence of an enterprise. Each of the plaintiff's RICO claims requires that he properly plead the existence of a RICO enterprise. 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d); *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990) ("Regarding pleading, the first rule is that '[a] plaintiff must identify the enterprise.'") (citing *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1136 (7th Cir. 1986). An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although

---

[5] In his response brief, (Br. 5-6, Nov. 16, 2005), Kaye does not argue that the predicate acts, while short-lived, show clear signs of threatening to continue into the future, a concept known as open-ended continuity. *See Roger Whitmore's Auto. Servs.*, 424 F.3d at 673 (citing *Midwest Grinding Co.*, 976 F.2d at 1023). The court, therefore, considers the argument forfeited.

not a legal entity." 18 U.S.C. § 1961(4); *Jennings*, 910 F.2d at 1440 ("Enterprises may be of two types: legal entities and extra-legal 'associations in fact.'"). "Whether legal or extra-legal, each enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings*, 910 F.2d at 1440. An enterprise is "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette,* 452 U.S. 576, 583 (1981) (distinguishing the proof required for the separate elements of "enterprise" and "pattern of racketeering activity"); *Jennings*, 910 F.2d at 1440 ("An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does.").

In his complaint, Kaye alleges that the enterprise is many different things, including an association-in-fact, a conspiracy, and a purpose to control real estate decisions: "The enterprise alleged in this claim is composed of the following individuals and entities - the named defendants, and some unnamed co-conspirators," (Compl., IX RICO Statement 6a, 17); "The enterprise I'm alleging is distinct from the DCD, CPC, RACM, DNZ, EVA, City - it was an association in fact that uses those other legitimate bodies to serve it's [sic] purposes," (Compl., IX RICO Statement 6c, 17); "The enterprise is the conspiracy to manipulate sales, zoning and grant decisions regarding hot Third District real estate to their own benefit," (Compl., IX RICO Statement 6d, 17); "I am alleging that the defendants are

individuals and entities that are members of the enterprise. They are not separate from the enterprise, nor are they the enterprise itself," (Compl., IX RICO Statement 6e, 17); "I am not alleging that the pattern of racketeering activity and the enterprise have merged into one entity. The enterprise is to control the real estate decisions and use that control for personal benefit, the pattern is all the acts they have been taking to achieve and exploit the power of public, and quasi public, office," (Compl., IX RICO Statement 7, 17-18); "[T]he enterprise of controlling and exploiting City real estate sales, zoning and grant determinations, and neighborhood zoning policy decisions, necessitated the pattern of racketeering activity," (Compl., IX RICO Statement 8, 18); "The organization is separate from the pattern of activity in which it engaged. There have been many predicate acts, and the organizational structure between Bunkie Miller of DCD, John Hyslop of DCD, Rocky Marcoux of DCD, City Plan Commissioner Julilly Kohler, Redevelopment Authority Commissioner Lincoln Fowler, Third District Alderman Mike D'Amato, East Village officers, and Mayor Tom Barrett, demonstrates that the 'enterprise' is established, organized, ongoing, and not merely the occurrence of one or two deals." (*Id.*)

Given these conflicting allegations of enterprise, the moving defendants argue that Kaye has not properly pleaded the existence of an enterprise because he has not alleged the structure, duration or organization of the alleged enterprise. (Br. 9-14, Nov. 4, 2005.) The moving defendants also argue that Kaye commits "the cardinal sin" of alleging an enterprise: attempting to plead the enterprise's structure by reference to its alleged course of conduct. (*Id.* at 14.) In his response brief, Kaye

- 13 -
Case 2:05-cv-00982-JPS   Filed 07/11/06   Page 13 of 17   Document 53

clarifies his allegation of enterprise: Kaye argues that the alleged enterprise is "the endeavor to use the public and quasi-public offices to private benefit with respect to buying, financing, remediating, and rezoning real estate." (Br. 5, Nov. 16, 2005.) Kaye reiterates that the enterprise is "the endeavor to manipulate sales, zoning, and grant determinations." (*Id.*) If Kaye committed a cardinal sin in drafting his complaint, he is unrepentant in his response brief. Kaye improperly pleads the existence of an enterprise by describing the enterprise's alleged purpose rather than its structure, duration, or organization. See *Jennings*, 910 F.2d at 1440. Each of the RICO claims, therefore, fails to state a claim upon which relief may be granted. *Id.* (affirming dismissal for failure to state a claim).[6]

Because the court dismisses Kaye's federal claims, the court shall dismiss the remaining supplemental state law claims without prejudice. 28 U.S.C. § 1367(c)(3); *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996) (stating that the presumption in favor of relinquishment of jurisdiction over supplemental state law claims should not be lightly abandoned because the presumption is based on "a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law"), *vacated on other grounds*, 522 U.S. 3 (1997).

---

[6]Kaye suggests that the court may find it appropriate to identify the DCD as the enterprise. (Br. 5, Nov. 16, 2005.) The court does not consider the DCD as the alleged enterprise because Kaye expressly disclaimed such an allegation in his complaint. (Br. 17) ("The enterprise I'm alleging is distinct from the DCD.") In his brief, Kaye does not advance any of the other suggestions of enterprise that he makes in his complaint, (*see* Compl. 17-18), and the court, therefore, considers those arguments forfeited. In any event, the other suggestions of enterprise were also inadequate: "an enterprise is something more than a conspiracy," *Jennings*, 910 F.2d 1441, and it is also something more than "naming a string of participants." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000).

II.  Motions for sanctions

Rule 11(b)(2) requires that "the claims, defenses, and other legal contentions [of filings] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Rule 11(c) of the Federal Rules of Civil Procedure allows courts to impose sanctions on a party if the requirements of Rule 11(b) are not met.  Under Rule 11, the district court may impose sanctions if a lawsuit is "not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *CUNA Mut. Ins. Soc'y v. Office and Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citations omitted).  The court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Id.*  The central goal of Rule 11 is to deter abusive litigation practices.  *Cooter & Gell v. Hartmarz Corp.*, 496 U.S. 384, 393 (1990).  This court's Rule 11 determination is reviewed for abuse of discretion. *Corley v. Rosewood Care Center Inc. of Peoria*, 388 F.3d 990, 1013-14 (7th Cir. 2004) ( "Because the district courts have the best information about the patterns of their cases, they are in the best position to determine whether a legal position is far enough off the mark to be frivolous or whether an attorney conducted an adequate inquiry under the particular circumstances of a case.").  The court may sanction *pro se* litigants pursuant to Rule 11.  *See Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990) ("Status as a *pro se* litigant may be taken into account, but sanctions can be imposed for any suit that is frivolous.").

In this instance the court finds that Kaye should have known that his RICO claims had no legal basis. More specifically, Kaye should have known that theft is not a predicate act under RICO; that the complaint does not allege facts that constitute extortion; that he must plead fraud allegations with particularity; that the alleged bribery scheme does not constitute a pattern of racketeering; and that a RICO enterprise is defined by its structure, duration, and organization, not by its purpose and conduct. Under the circumstances the court will order that Kaye reimburse the defendants for their reasonable and necessary attorney's fees incurred in connection with their motions to dismiss and for sanctions.

III. Motion to intervene, bifurcate and stay

Given the court's disposition of this action, the court denies the motion to intervene, bifurcate, and stay as moot.

Accordingly,

**IT IS ORDERED** that the motions to dismiss [docket #'s 19, 22] be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the motion for leave to file excess pages [docket # 18] be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the motions for sanctions [docket #'s 36, 38] be and the same are hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the motion to intervene, bifurcate, and stay [docket # 48] be and the same is hereby **DENIED** as moot.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this  11th  day of July, 2006.

BY THE COURT:

 s/ J. P. Stadtmueller   
J. P. Stadtmueller  
U.S. District Judge

- 17 -
Case 2:05-cv-00982-JPS    Filed 07/11/06    Page 17 of 17    Document 53